## 24216

James Paul RICE, Appellant-Respondent v. MULTIMEDIA, INC.,
Respondent-Appellant.

(456 S.E. (2d) 381)

Supreme Court

96

*William McBee Smith,* Spartanburg, *for appellant-respondent.*

*William D. Herlong,* Greenville, *for respondent-appellant.*

Heard Nov. 3, 1994.

Decided Mar. 27, 1995.

CHANDLER, Chief Justice:

Appellant/Respondent James Paul Rice (Rice) and Respondent/Appellant Multimedia, Inc. (Multimedia) appeal a jury verdict awarding Rice partial recovery in his action for wages due. We affirm.

## FACTS

It 1983, Rice was hired as a radio advertising salesperson for WFBC AM/FM, a division of Multimedia. In 1989, Rice also began employment as National Sales Manager for the Clemson Sports Network (CSN), another division of Multi-

media. In June 1990, he was terminated.

Rice filed suit, demanding payment for commissions due on seven contracts, three of which covered local advertising for WFBC and four of which covered advertising for CSN. WFBC's employee handbook provided that sales commissions would be paid to a departing employee only for those advertisements sold by the employee and **actually broadcast** through the end of the month in which the employee worked his last day. Pursuant to this departure policy, Multimedia refused to pay commissions on the above seven contracts since the advertisements had not been broadcast.

Trial Court granted Multimedia directed verdict on the three contracts covering local advertising for WFBC. The jury returned a verdict for Rice on the remaining contracts for violation of the Wage Payment Act,[1] awarding damages of $16,605.45. It also found Multimedia guilty of breach of contract, but awarded no damages to Rice.

Pursuant to § 41-10-80(C) of the Wage Payment Act, Rice petitioned for treble damages and attorney's fees. Trial Court denied the petition for treble damages and awarded partial attorney's fees. Both Rice and Multimedia appeal.

## ISSUES

A. *Rice's Appeal:*
1. Was Rice entitled to treble damages pursuant to S.C. Code Ann. § 41-10-80(C)?
2. Is Multimedia's commission policy void as against public policy?
3. Was Rice entitled to an award of full attorney's fees?

B. *Multimedia's Appeal:*
1. Did WFBC's departure policy apply to the four contracts covering advertising on CSN, thereby entitling Multimedia to directed verdict?
2. Was Rice entitled to recovery under the Wage Payment Act?
3. Was Rice entitled to attorney's fees?

## DISCUSSION

### A. *Rice's Appeal*

---

[1] S.C. Code Ann. § 41-10-10 *et seq.* (Supp. 1993).

## 1. *Treble Damages*

Section 41-10-80(C) of the Wage Payment Act states:

> In case of any failure to pay wages due to an employee
> as required by Section 41-10-40 or 41-10-50 the employee
> **may recover** in a civil action an amount equal to three
> times the full amount of the unpaid wages, plus costs and
> reasonable attorney's fees as the court may allow. Any
> civil action for the recovery of wages must be commenced
> within three years after the wages become due. [Emphasis supplied.]

Trial Court declined to treble the damages, holding that the
provision did not apply to employers who withhold wages in
good faith. Rice contends that the treble damage provision is
mandatory, not discretionary and, therefore, is not subject to
any good-faith exceptions. We disagree.

It is well settled that the words of a statute will be
given their plain and ordinary meaning. *Miller v. Doe*,
441 S.E. (2d) 319 (1994). Here, the statute explicitly
provides that the employee "may" recover treble damages.
"The use of the word 'may' signifies permission and generally
means that the action spoken of is optional or discretionary."
*State v. Wilson*, 274 S.C. 352, 356, 264 S.E. (2d) 414, 416 (1980).
Thus, by using "may," rather than "shall," the legislature has
provided that the penalty is discretionary with the judge. This
interpretation accords with the purpose of the Wage Payment
Act, to wit: to protect employees from the unjustified and wilful retention of wages by the employer. The imposition of treble damages in those cases where there is a bona fide dispute
would be unjust and harsh. *See Bradshaw v. Jayce Enterprises*, 212 Kan. 206, 510 P. (2d) 174 (1973); *Klondike Industries Corp. v. Gibson*, 741 P. (2d) 1161 (Alaska 1987).

In *Apache East, Inc. v. Wiegand*, 119 Ariz. 308, 580 P. (2d)
769 (Ct. App. 1978), the Court of Appeals of Arizona reached
the same conclusion that an employer is not liable for penalties under a wage payment statute when there is a good-faith
dispute between employee and employer.[2] We find the lan-

---

[2]The Arizona wage payment statute was similar to South Carolina's in that
it provided that treble damages "may" be awarded, but did not explicitly provided for a good-faith exception to penalties. The legislature subsequently
amended the statute to explicitly provide for a good-faith defense.

guage of *Apache East* compelling here:

> As a policy matter this appear just to all parties. If there is a dispute over unpaid wages the employer acts at his peril and the court in its discretion may award treble damages when the withholding was unreasonable and there was no good faith wage dispute. However, there are some wage disputes when the issue may involve a valid close question of law or fact which should properly be decided by the courts. We do not believe the legislature intended to deter the litigation of reasonable good faith wage disputes; we do believe the legislature intended to punish the employer who forces the employee to resort to the court in an unreasonable or bad faith wage dispute.

119 Ariz. at 312, 313, 580 P. (2d) at 73, 774.

Such an interpretation accords with precedent holding that the employer is protected from penalties if there is a good-faith dispute over wages allegedly due. In *Wynne v. Seaboard Air Line Railway,* 96 S.C. 1, 79 S.E. 521 (1913), an action for wages under § 3812 of the Civil Code of 1912, the Court implied a good-faith provision into the statute and held that an employer should not be penalized under the statute for failure to pay wages upon assertion of a valid defense to payment. Similarly, in *Linder v. Paramount Acceptance Corp.,* 291 S.C. 539, 354 S.E. (2d) 567 (Ct. App. 1987), an action for wages under the former § 41-11-170 (now repealed and replaced by the Wage Payment Act), the employer was permitted to assert the affirmative defense of a good-faith dispute.

Rice cites *Prevatte v. Asbury Arms,* 302 S.C. 413, 396 S.E. (2d) 642 (Ct. App. 1990), in which the Court of Appeals construed similar language in the Landlord and Tenant Act as mandatory, not discretionary. Since the Landlord and Tenant Act is of quite different subject matter than the Wage Payment Act, *Prevatte* is not controlling here. *See Spartanburg County v. Arthur,* 180 S.C. 81, 185 S.E. 486 (1936) (Court should interpret statute based on similar language in other statutes dealing with same or similar subject matter).

We hold that the treble damages provision of § 41-10-80(C) is not mandatory. Here, Trial Court, finding no evidence that Multimedia acted intentionally or in bad faith, refused to award treble damages. We find no abuse of

discretion in this ruling.

## 2. *Public Policy*

Rice contends that WFBC's departure policy, whereby a departing employee is entitled to commissions only for advertisements sold and actually broadcast prior to leaving, is void as against public policy. He argues that the departure policy violates the Wage Payment Act since it determines, by private agreement, what wages are "due" under the Act. We disagree.

"A sound public policy requires the enforcement of contracts deliberately made, which do not clearly contravene some positive law or rule of public morals. . . . Courts should not annul contracts on doubtful grounds of public policy. In such matters it is better that the legislature should first speak." *Warren v. Pilgrim Health & Life Ins. Co.,* 217 S.C. 453, 456, 60 S.E. (2d) 891, 893 (1950) (*quoting Crosswell v. Conn. Indemnity Assoc.,* 51 S.C. 103, 28 S.E. 200 (1897)). An employee and employer can set forth by contract the terms for payment of commissions. *Moss v. Porter Brothers, Inc.,* 292 S.C. 444, 357 S.E. (2d) 25 (Ct. App. 1987).

Here, Multimedia explained that its departure policy is fairly standard in the broadcast advertising business.

In order to ensure that the salesperson gives continuing service to the client after the sale, the commissions are withheld until the advertisement is actually broadcast.

Multimedia's departure policy establishes the manner in which it will pay sales commissions. It is not arbitrary nor does not violate any law. Accordingly, we agree with the Trial Court that it is not void as against public policy.

## 3. *Attorney's Fees*

Rice petitioned the trial court for attorney fees in the amount of $64,000. The trial court limited the amount of attorney's fees to $32,100 since Rice prevailed only in part. *See Baron Data Systems, Inc. v. Loter,* 297 S.C. 382, 377 S.E. (2d) 296 (1989). Rice contends that this was error. We disagree.

Here, the trial court thoroughly addressed each of the *Baron* factors in determining the award of attorney's fees. We find no abuse of discretion.

## B. *Multimedia's Appeal*

### 1. *Directed Verdict*

Multimedia contends that Rice was an employee of WFBC at all times and, therefore, was subject to its departure policy concerning commissions on all the contracts. It argues that it was entitled to directed verdict on the four contracts. Rice negotiated for CSN advertising. We disagree.

It is well settled that in considering a motion for directed verdict, the trial court must view the evidence and all inferences from the evidence in the light most favorable to the nonmoving party; if the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury. *Horry County v. Laychur*, 315 S.C. 364, 434 S.E. (2d) 259 (1993).

Here, there was conflicting evidence as to whether Rice was bound by WFBC's departure policy. Trial Court correctly submitted this issue to the jury.

### 2. *Recovery Under Wage Payment Act*

Multimedia argues that commissions were not "due" to Rice upon his termination; therefore, he was not entitled to recovery under the Wage Payment Act.

As indicated above, it was for the jury to decide whether Rice, when negotiating CSN contracts, was an employee of WFBC or CSN and, further, whether the WFBC commission departure policy applied to the CSN contracts. Rice testified he was paid commissions on CSN contracts prior to the broadcast of the advertisements. Upon this evidence, the jury was entitled to conclude that Rice was not subject to WFBC's departure policy when negotiating the CSN contracts.

### 3. *Attorney's Fees*

Multimedia contends that the trial court abused its discretion in awarding Rice attorney's fees in excess of the verdict and the amount due Rice's attorney under his contingency fee contract. We disagree.

The amount of recovery and the contingency of compensation are only two of the six factors to be considered by the trial court in determining an appropriate attorney's fee. *Baron Data Systems v. Loter, supra; Columbia Teachers Federal Credit Union v. Newsome*, 303 S.C. 162, 399 S.E. (2d) 444 (Ct. App. 1990). Here, the Trial Court weighed

all of the *Baron* factors in determining the appropriate fee. We find no abuse of discretion.

The remaining issues are affirmed pursuant to Rule 220(b)(1), SCACR: *Rush v. Blanchard*, 310 S.C. 375, 426 S.E. (2d) 802 (1993) (It is within trial court's discretion to reduce an excessive verdict); *Rhame v. City of Sumter*, 113 S.C. 151, 101 S.E. 832 (1920) (defendant claiming verdict should be reformed must make argument prior to jury's discharge).

Affirmed.

FINNEY, TOAL, MOORE and WALLER, JJ., concur.