**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

H. RAY RAMBLER,
Plaintiff-Appellee,

v.

ROCHEZ BROTHERS, INC.; JOSEPH J.
ROCHEZ, JR.; ROBERT E. SHEBECK,
Defendants-Appellants.

No. 98-2636

H. RAY RAMBLER,
Plaintiff-Appellant,

v.

ROCHEZ BROTHERS, INCORPORATED;
JOSEPH J. ROCHEZ, JR.; ROBERT E.
SHEBECK,
Defendants-Appellees.

No. 98-2687

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
G. Ross Anderson, Jr., District Judge.
(CA-98-137-6-13)

Argued: October 28, 1999

Decided: December 13, 1999

Before WILKINSON, Chief Judge, and LUTTIG and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Larry K. Elliott, COHEN & GRIGSBY, P.C., Pittsburgh, Pennsylvania, for Appellants. Thomas Louis Stephenson, NEXSEN, PRUET, JACOBS & POLLARD, L.L.P., Greenville, South Carolina, for Appellee. **ON BRIEF:** Helen E. Burris, NEXSEN, PRUET, JACOBS & POLLARD, L.L.P., Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Rochez Brothers, Inc. ("Rochez"), appeals from the district court's refusal to amend its judgment in favor of H. Ray Rambler under the South Carolina Wage Payment Act, and from the district court's denial of Rochez's motion for a new trial. Rambler cross-appeals from the district court's denial of his motion to reconsider its decision not to award him treble damages under the South Carolina Wage Payment Act. For the reasons that follow, we affirm.

I.

Rambler was employed by Rochez at its Hovis Precision Parts manufacturing plant in Simpsonville, South Carolina from 1987 until October 1, 1997. The terms of employment included a bonus program defined in an April 1, 1987 letter addressed to Rambler and signed by Rochez. The bonus program was designed to give Rambler a percentage of the plant's profits. Because the plant did not become profitable until 1994, no bonuses were due until then. Rambler was paid bonuses for 1995, 1996, and 1997, but these bonuses were for lesser amounts than required by the formula set forth in the April 1, 1987 letter. Rambler testified that he demanded his bonus money on multi-

2

ple occasions, J.A. 114-22, 124-29, and that Rochez told him that he would be "taken care of." J.A. 144 ("He said, `I will take care of you down the road.'"), 146, 151 ("I was promised if I stick with him, down the road . . . I'd be taken care of.").

Rambler continued to work for Rochez until the plant was sold on October 1, 1997. When Rochez failed to pay the bonuses due at the time of separation (after the sale), Rambler sued for and recovered bonus money for 1994, 1995, 1996, and 1997. The jury found that the April 1, 1987 letter/agreement had not been revoked during the course of Rambler's employment, and that Rochez had breached the agreement and violated the Wage Payment Act, S.C. Code§ 41-10-10 et seq., which requires payment of wages due to an employee after separation.

Rambler also filed a motion requesting that the court add attorneys' fees to the $150,000 verdict and reconsider its refusal to treble the damages pursuant to S.C. Code § 41-10-80. **1** The court denied the motion to reconsider but did add fees and costs to the verdict.

Rochez filed a motion for a new trial or, alternatively, an amendment of judgment. The court denied the motion, although it did reduce the verdict to $146,300 (plus fees). Rochez now appeals the district court's decision, and Rambler cross-appeals.

_____

**1** S.C. Code § 41-10-80(c) provides:

> In case of any failure to pay wages due to an employee as required by [the Wage Payment Act] the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow.

(emphasis added). The South Carolina Supreme Court, in Rice v. Multimedia, Inc., 456 S.E.2d 381 (S.C. 1995), explained that trebling is discretionary. See id. at 384. ("We hold that the treble damages provision . . . is not mandatory. Here, Trial Court, finding no evidence that Multimedia acted intentionally or in bad faith, refused to award treble damages. We find no abuse of discretion . . . ."). Rochez pled an affirmative defense that it acted in good faith, J.A. 27, and with no finding of bad faith, the district court did not abuse its discretion in refusing to treble damages in this case.

3

II.

Rochez claims that Rambler waived his 1994 bonus claim during testimony at a deposition, and in the alternative, that his claim for 1994 damages is time-barred.

First, Rochez contends that Rambler waived his 1994 bonus claim because Rambler, in his June 1998 deposition, denied that he was seeking damages for the year ending June 1994, J.A. 79, and that Rochez relied on these statements and did not prepare for the 1994 claim made at trial. The district court determined that the testimony was relevant only insofar as it could be used to discredit Rambler before the jury, and Rochez did in fact use it to attempt to discredit Rambler. J.A. 60-61. Additionally, the district court reasoned that Rochez was on notice of the 1994 claim because an October 1997 letter from Rambler asked for $137,000 (which calculation necessarily included the bonus owed for 1994, although "1994" was not mentioned), and because Rambler stated his damages as $150,000 in response to interrogatories. Also, Rochez received, prior to trial, an exhibit Rambler planned to use that included the 1994 damages.

Rochez does not question the content of the jury instruction on waiver[2] but instead argues that the district court should not have instructed the jury on waiver and should have found as a matter of law that Rambler waived his claim to the 1994 bonus. Rochez cites no case law that requires a district court to treat deposition testimony like Rambler's testimony in this case as a "voluntary relinquishment of a known right," and not to let the jury decide the factual question whether a particular statement at a deposition constitutes a waiver. Instead, Rochez merely argues that given the deposition testimony, the 1994 claim at trial was an unfair "ambush." See Appellants' Br. at 9. Given the multiple ways in which the district court found that Rochez was on notice of the 1994 claim -- Rambler's answer to interrogatories and Rambler's exhibit for trial, which included the 1994 bonus -- the

_____

[2] In fact, Rochez concedes that "[w]aiver consists of a voluntary relinquishment of a known right," Appellants' Br. at 9, which is language virtually identical to that used by the district court to instruct the jury on waiver, see Trial Transcript 2-39 ("Waiver is defined as the intentional relinquishment of a known right.").

4

court did not err in rejecting Rochez's argument that it was ambushed and submitting the factual question of waiver to the jury.

And given the appropriate instruction on waiver, the jury was in a position to evaluate the facts related to the 1994 claim, including the deposition testimony. Because Rambler requested from Rochez bonus money including the 1994 bonus on multiple occasions and gave Rochez a trial exhibit that included the 1994 bonus, the jury could reasonably have found that Rambler simply made a mistake at his deposition when he denied asking for the 1994 bonus.

Second, Rochez contends that the 1994 bonus claim was time-barred under the three-year statute of limitations because the bonus was due in May 1994 and the present suit was not filed until December 1997. The district court determined that facts were adduced that could support Rambler's theory that he did not discover the breach until May 1995, or in the alternative, that Rochez's promises that "we'll take care of you" forged a new contract that was not broken until he was not taken care of upon separation. **3** J.A. 61-62.

This court must resolve two issues to decide whether the 1994 bonus claim was time-barred: the date of discovery and the effect of Rochez's statement that Rambler would be taken care of. First, as to the date of discovery, Rochez argues that Rambler should have known that he was not being paid in May 1994, when he did not receive the bonus. Rochez favorably cites Maher v. Tietex Corp., 500

_____

**3** S.C. Code § 41-10-80 provides that "[a]ny civil action for recovery of wages must be commenced within three years after the wages become due." (emphasis added). Neither party (nor the district court) cites this provision in the portions of their briefs discussing the statute of limitations. Instead, Rochez contends that S.C. Code § 15-3-530(1), the general three-year statute of limitations for contract claims, is applicable. See Appellants' Br. at 10. Even assuming S.C. Code § 41-10-80 applies, the district court's decision that the jury could reasonably have found that a new contract had been created would support a theory that the wages then "became due" at the time of separation, when Rambler was not "taken care of." Thus, the statute of limitations, even if narrowly read under section 41-10-80, would not have started to run until the time of separation, 1997. Additionally, Rochez concedes that the "date of discovery of the breach" is the relevant date. See Appellants' Br. at 11.

S.E.2d 204 (S.C. Ct. App. 1998), in which the court held that the statute of limitations began to run when Maher inquired about not being paid his bonus and was led to believe that he would get promotions in lieu of bonuses. See id. at 207-08. However, the jury in the present case could reasonably have found that Rambler was not on notice that he would never be paid the bonuses: Rambler testified that he believed the company had insufficient funds to pay him the 1994 bonus right away, J.A. 113, and when he did ask about his bonuses, he was told that he would be "taken care of" sometime in the future. J.A. 144, 151.

Second, as to the effect of Rochez's statements, Rambler makes an estoppel argument that employer representations suggesting that the bonus would be paid at some time tolled the statute of limitations. The Maher court explained:

> In Workers' Compensation law, estoppel will toll the statute of limitations during the period of reliance if an employer "induces a claimant to believe the claim is compensable and will be taken care of without its being filed within the period required by the statute."

500 S.E.2d at 209 (emphasis added; citations omitted). Suggestions that the employer will "take care of" the employee, then, can not only prevent the clock from starting under the date of discovery theory but can stop the clock if it had already started to run.

Rochez argues that statements that Rambler would be "taken care of" did not amount to misrepresentations upon which Rambler could rely. Although the Maher court found that Maher did not rely on misrepresentations, Rochez's attempt to analogize Maher to Rambler's situation is unavailing. The Maher court made clear that estoppel tolls the statute of limitations when the employer "induces a claimant to believe the claim . . . will be taken care of ." In Maher, the employer had suggested it would give promotions in lieu of the bonus; in the present case, Rochez points to no reading of Rochez's promise to take care of Rambler that would suggest anything but paying the bonuses in the future. And, the jury heard evidence upon which it could have found that Rambler was led to believe that he would be paid bonuses due upon the plant's 1997 sale.

6

Therefore, the district court did not err in concluding that facts could have been found to support Rambler's position that his claim was timely filed.

III.

Rochez also claims that Rambler was estopped from making bonus claims on the April 1, 1987 contract because he continued to work for Rochez even though he did not receive the appropriate bonuses. Rochez frames this claim by saying that the district court erred by not overturning the jury verdict, because Rambler, by continuing to work for Rochez, by law consented to any change in the bonus plan. This claim, however, goes directly to the district court's jury instruction on estoppel and to the jury's implied factual finding that there was no estoppel. The jury instruction did accord with South Carolina law, and factually, to the extent that Rambler could have reasonably believed that he would eventually be paid his bonuses based on representations by Rochez, he could not be said to have waived his claim to the bonuses by continuing to work for Rochez.

The district court's jury instruction read:

> I also instruct you that an employer may make unilateral changes in prospective payments of wages, benefits, or policies. These changes constitute offers for services that the employee may perform and by continuing to work, the employee accepts the proposed alterations in the employment and may be estopped from recovering any lost money.
>
> However, if the employee continues to work and objects to the changes, he may not be estopped from trying to recover the money at issue and he has not represented to his employer that he has accepted the change.

J.A. 192 (emphasis added). Based on the South Carolina caselaw that follows, the instruction is correct as a matter of law, and the jury could reasonably have found that Rambler was not estopped from recovering his bonuses, because he objected to Rochez's failure to pay him his full bonuses.

7

Rochez cites <u>Facelli</u> v. <u>Southeast Marketing Co.</u>, 327 S.E.2d 338 (S.C. 1985), in support of its argument that when an employee continues to work after a change in the terms of employment, he is estopped from making a later claim based on that change. In <u>Facelli</u>, the South Carolina Supreme Court held that where the employee was notified that the commission rate had changed and the employee continued to work without complaint for six more months, he impliedly consented to the change. However, <u>Facelli</u> does not address the circumstance in which the employee does not know of a change in policy or reasonably believes that, as a result of a policy change, he will be paid what is coming to him later than when he was supposed to receive it.

Rochez also relies upon <u>Matthews</u> v. <u>City of Greenwood</u>, 407 S.E.2d 668 (S.C. Ct. App. 1991), in which the employee objected to revocation of his personal use of the city car privilege at the time he was notified of the change, but then continued to work for seven years without complaint while abiding by the policy. In <u>Matthews</u>, the South Carolina Court of Appeals held that the employee had impliedly consented to the change. Two factors distinguish the present case from <u>Matthews</u>, however. First, Rambler continued to object throughout his tenure, and second, he was given assurances that he would be paid, and so the jury could have reasonably found that he never really followed the policy.

A third South Carolina case is most on point, however. In <u>Estes</u> v. <u>Roper Temporary Services, Inc.</u>, 403 S.E.2d 157 (S.C. Ct. App. 1991), where the employee did object to the change in compensation, unlike the employee in <u>Facelli</u>, the South Carolina Court of Appeals held that there was a genuine issue of material fact as to whether the employee consented to the change and was therefore estopped from objecting to the change. Therefore, the court's instruction permitting the jury to determine whether Rambler had in fact consented to or objected to the change was correct under <u>Estes</u> .

The district court's instruction was not in error under South Carolina caselaw, and there is sufficient evidence in the record to support the jury's finding that Rambler was not estopped from recovering his bonuses.

IV.

Rochez makes three additional claims on appeal. We have reviewed these claims and find them to be without merit. First, Rochez claims that the district court erred when it referred to a document as an "admission" because the jury might have interpreted the evidentiary term as the court's assessment that the document was a confession. What the court actually said was "It's an admission under 801[d](2)." J.A. 154. The court was not telling the jury that Rochez admitted (i.e., "confessed") to the substance of or effect of the document, and therefore the district court did not err.

Second, Rochez claims that the district court erred by not declaring a mistrial when Rambler's attorney said "I think" twice in his closing argument. However, Rochez neither requested a corrective instruction nor contemporaneously objected to the instruction, and therefore, the district court did not abuse its discretion.

Finally, Rochez claims that the district court erred in not admitting evidence of Rambler's prior conviction. However, because Rochez produced no evidence to show that the conviction occurred within the requisite ten years prior to trial, see Fed. R. Evid. 609(b), and because the district court held that the prejudicial effect outweighed the probative value, the district court did not err in excluding evidence of the prior conviction.

For the reasons stated herein, the judgment of the district court is affirmed.

<u>AFFIRMED</u>.