THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Brenda C. Gilmore, Teresa Ann Moore, Sena Austin Pearl, 
 Susan Marie Buksa, Sharon Williams Ford, Rolanda Patice Lewis, Mary Kate Green, 
 Kari Anne O'Keefe, Jan Lynn McWells, Deborah Ann Cooke, Robert James Phillips, 
 Joye Denise Rymar, Steven Michael Poth, Lisa Ann McIntyre, Robert Warham, Jennifer 
 Percy, Yvonne Cox, Caroline Carmichael, Michele Tholen, Paul Fulton, John Sparozic, 
 Peggy Graham, Regina Brandon, Stephanie Foresterio, Charalene Harris, Betty 
 Phillips Nichole Kathleen Lambert, Karen Rochelle Lee, Lisa Michelle Cox, Wilbert 
 Thomas Grissett, Tastonia Michelle Myatt, Michael Katen, Sondra L. Katen, Joann 
 Morris, Beth Fogle, and Michelle
Ventura,        Respondents,
 
 
 

v.

 
 
 
Holiday Network Int., Inc., DEI Marketing, Holiday Network 
 Int. of GA, Inc., Dan McGeown, Susan McGeown, Scott McLaren and Dan Carmichael,                        
 Defendants,
Of whom Dan McGeown and Scott McLaren are the,       
Appellants.
Mary Thaggard, Dena Pearl, Dessie Coates, Julianna
Boundy, James E. Cameron, 
 Lisa J. Fera, Brad McCray, Ashley Rowell, Judy Carayiannis, Patricia
Hanick, 
 Frank Cross, Megan Weber, Jay Baker, Carol Shanks, Joanne Mianti, et al., 
 on behalf of themselves and all other similary situated,       
Respondents,
 
 
 

v.

 
 
 
Holiday Network Int., Inc., DEI Marketing, Holiday Network Int. of GA, 
 Inc., Dan McGeown, Susan McGeown, Scott McLaren, and Dan Carmichael,       
Defendants,
Of Whom Dan McGeown and Scott McLaren are the,       
Appellants.
 
 
 

Appeal From Horry County
J. Stanton Cross, Jr., Master-In-Equity

Unpublished Opinion No. 2004-UP-423
Submitted June 8, 2004  Filed June 
 30, 2004

AFFIRMED IN PART and REVERSED IN PART

 
 
 
Fred B. Newby and C. Scott Masel, of Myrtle Beach, for Appellants.
Gene McCain Connell, Jr. and Norwood David DuRant, both of 
 Surfside Beach, and Richard S. Joye, of Murrells Inlet, for Respondents.
 
 
 

PER CURIAM:  Dan McGeown and Scott McLaren 
 appeal the trial courts order holding them individually liable to employees 
 of a closed business for unpaid wages under the South Carolina Payment of Wages 
 Act and theory of promissory estoppel.   We affirm in part and reverse in part. [1]      
FACTS
This case arises after the sudden closing of Holiday Network 
 International, Inc.  McGeown was the president and owner of Holiday Network.  
 McGeown did not live in state, but would visit the Myrtle Beach office every 
 couple of months for approximately a weeks duration.  McGeown signed the payroll 
 checks and generally ran the business without regard to corporate formalities.  
 McLaren was the vice president, marketing director, and effectively acted as 
 the boss at the Myrtle Beach location when McGeown was absent.  After the 
 close of Holiday Network, McLaren was transferred to a business owned by McGeown 
 in Florida.  
When Holiday Network suddenly closed, the employees 
 were left without payment for wages due.  These employees were to have been 
 paid the last day the business operated, a Friday.  However, McLaren explained 
 to them payment was late due to a delayed Federal Express delivery.  McLaren 
 told employees if any of them were in desperate need of money prior to Monday, 
 they could come to his house and he would sell his golf clubs to give them money 
 from the sale.  At least one employee testified he went to McLarens house to 
 accept his offer, but McLaren did not answer the door.  
On Sunday, McGeown told the bookkeeper that he 
 would personally see that everyone was paid.  This same employee testified that 
 in her capacity as bookkeeper, she relayed this information to all of the employees 
 who called her home.  Many other employees also testified as to direct communication 
 between themselves and McGeown and his promise they would be paid.  Others testified 
 they tried to contact McGeown in Florida, but could never speak to him personally.  
 Holiday Network was closed that Monday.  
Left without wages they had earned, the employees 
 filed suit against the Holiday Network, McGeown, and McLaren.  The circuit court 
 granted the employees partial summary judgment, declaring that they were employees 
 of Holiday Network as a matter of law.  The case subsequently was referred to 
 the master-in-equity for trial.  The trial court held McGeown and McLaren liable 
 for the unpaid wages under a theory of promissory estoppel and pursuant to the 
 South Carolina Payment of Wages Act.  S.C. Code Ann. § 41-10-10 et seq.  
 In addition, the court trebled the damages and awarded attorneys fees pursuant 
 to the statute.  S.C. Code Ann. § 41-10-80(C) (Supp. 2003).
STANDARD OF REVIEW
When legal and equitable actions are maintained 
 in one suit, each retains its own identity as legal or equitable for purposes 
 of the applicable standard of review on appeal.  Corley v. Ott, 326 S.C. 
 89, 485 S.E.2d 97 (1997).  An action for promissory estoppel is equitable in 
 nature.  West v. Newberry Elec. Co-op., 357 S.C. 537, 542, 593 S.E.2d 
 500, 502 (Ct. App. 2004).  Thus, in reviewing the action for promissory estoppel, 
 we may determine facts in accordance with our own view of the preponderance 
 of the evidence.  Jocoy v. Jocoy, 349 S.C. 441, 444, 562 S.E.2d 674, 
 675 (Ct. App. 2002).  However, we are not required to disregard the findings 
 of the trial court, which saw and heard the witnesses and was in a better position 
 to evaluate their credibiliy.  Id.  In the action pursuant to the South 
 Carolina Payment of Wages Act, which is an action at law, this courts scope 
 of review extends only to the correction of errors of law.  See Evans 
 v. Taylor Made Sandwich Co. 337 S.C. 95, 101, 522 S.E.2d 350, 353 (Ct. App. 
 1999) (stating factual disputes under the Payment of Wages Act are to be determined 
 by a jury); Sims v. Hall, 357 S.C. 288, 294, 592 S.E.2d 315, 318 (Ct. 
 App. 2003) (stating the standard of review for an action at law).  The factual 
 findings of the trial court will not be disturbed on appeal unless a review 
 of the record reveals there is no evidence which reasonably supports the courts 
 findings.  Sims, at 294-95, 592 S.E.2d at 318.
LAW/ANALYSIS
 1.     Promissory Estoppel 
McGeown and McLaren argue the trial court erred 
 in finding liability against both of them based on a theory of promissory estoppel.  

A successful claim under promissory estoppel requires 
 four elements: (1) the presence of a promise unambiguous in its terms, (2) reasonable 
 reliance upon the promise by the party to whom the promise is made, (3) the 
 reliance is expected and foreseeable by the party who makes the promise, and 
 (4) the party to whom the promise is made must sustain injury in reliance on 
 the promise.  Satcher v. Satcher, 351 S.C. 477, 483-484, 570 S.E.2d 535, 
 538 (Ct. App. 2002).  The applicability of the doctrine [of promissory estoppel] 
 depends on whether the refusal to apply it would be virtually to sanction the 
 perpetration of a fraud or would result in other injustice.  Id.  at 
 484, 570 S.E.2d at 538 (citation omitted).
McLaren was not the owner of Holiday Network; instead 
 he only managed the Myrtle Beach operation during McGeowns absence.  Although 
 he made representations to some of the other employees that they would be paid, 
 McLaren neither had control over the actual signing and sending of these paychecks 
 nor did he personally assume any obligation.  The employees place much emphasis 
 on McLarens offer to sell his golf clubs and pay any employees that could not 
 wait for their paycheck.  However, it would be inequitable to use this offer 
 of charity to impose liability on McLaren personally.
As to the claims against McGeown, the employees 
 presented testimony that McGeown promised them that they would be paid.  According 
 to the bookkeeper, he assured her that he would personally see to everyone being 
 paid.  She then relayed this assurance to other employees.  Although the employees 
 presented this testimony as evidence of McGeowns promise to personally pay 
 them, they did not present any evidence of any injury caused by reliance on 
 this promise.  
According to the testimony, the earliest McGeown 
 made the promise to pay was the last day Holiday Network operated, a Friday.  
 There is no evidence any employee continued working in reliance on either McGeown 
 or McLarens promises.  In fact, the next business day, a Monday, Holiday Network 
 was closed.  As the employees did not establish every element of promissory 
 estoppel, their cause of action based on this theory must fail.  
 2.     South Carolina Payment of Wages Act 

a.  Liability under the 
 South Carolina Payment of Wages Act

McGeown and McLaren argue 
 they were not employers who knowingly permitted the corporation to violate the 
 South Carolina Payment of Wages Act.  We affirm as to McGeown and reverse as 
 to McLaren.
The South Carolina Payment of Wages Act provides 
 every employer in the State shall pay wages due. . .  S.C. Code Ann. § 41-10-40(A) 
 (Supp. 2003).  The statute further defines an employer as a corporation . 
 . . and any agent or officer of the above classes employing any person in this 
 State.  S.C. Code Ann. § 41-10-10(1) (Supp. 2003).  As this court explained, 
 the legislature intended to impose individual liability on agents or officers 
 of a corporation who knowingly permit their corporation to violate the 
 Act.  To hold otherwise would require us to ignore the words and any agent 
 or officer of the above classes. Dumas v. Infosafe Corp., 320 S.C. 
 188, 195, 463 S.E.2d 641, 645 (Ct. App. 1995) (emphasis added).  In Dumas, 
 the court imposed individual liability under the Payment of Wages Act upon a 
 business president, who was also the sole shareholder.  
Under a plain reading of the acts definition of 
 employer, both McGeown and McLaren may be considered employers.  They were 
 both officers, president and vice president respectively, of a corporation, 
 Holiday Network.  Dumas requires this court to determine whether McGeown 
 and McLaren knowingly permitted the business to violate the Payment of Wages 
 Act.  McGeown was the owner, ran the business, directed the employees, signed 
 the payroll checks, and continually promised various employees that he would 
 pay them.  We find the evidence supports the trial courts determination that 
 McGeown did knowingly permit the business to violate the act.
However, the trial court made no findings of fact 
 concerning McLarens ability or power within the business as it related to the 
 payment of payroll.  Despite McLarens title as vice president, it was not in 
 his power to pay the employees.  Instead, payment was in McGeowns power.  McLaren 
 could not knowingly permit the business to withhold wages, because there 
 is no indication that he had the authority or power to grant or withhold wages.  
 Therefore, we find the trial court erred in holding McLaren liable under the 
 South Carolina Payment of Wages Act.

b.  The law of the case

McGeown 
 [2] argues a prior court order is the law of the case and holds he is not 
 an employer of any of the plaintiffs.   We disagree.
A prior circuit court order 
 stated it grants partial summary judgment to the Plaintiffs and finds, as a 
 matter of law, that they were employees of Defendant, Holiday Network Int., 
 Inc.  The order justifies its decision based on the fact that the employees 
 presented, among other things, payroll check stubs to them from the business.  
 It is important to note that this order was issued in the shadow of denials 
 to two sets of requests for admission from the employees asking Holiday Network 
 to admit it employed them and that they received paychecks from it.  
The definition of employer under the South Carolina 
 Payment of Wages Act clearly envisions the existence of multiple employers.  
 See S.C. Code Ann. 41-10-10(1); Dumas v. Infosafe Corp., 320 S.C. 
 188, 463 S.E.2d 641 (Ct. App. 1995) (holding both the company and its president 
 liable under the Act).  The circuit court order does not prohibit the existence 
 of other employers, but merely declares that the employees were employees 
 of Holiday Network.  This definition neither actually nor by implication prohibits 
 the naming of other parties as being employers, if such a determination is 
 legally and factually supported.  Therefore, we find this order does not limit 
 the application of the status as employer to Holiday Network exclusively.

c.  Treble damages

McGeown argues the damages should not be trebled 
 because he did not act intentionally or in bad faith.  
Section 41-10-80(C) of the South Carolina Wage 
 Payment Act provides in part:
In case of any failure to pay wages due to an employee as 
 required by Section 41-10-40 or 41-10-50 the employee may recover in a civil 
 action an amount equal to three times the full amount of the unpaid wages, plus 
 costs and reasonable attorneys fees as the court may allow.
S.C.Code Ann. § 41-10-80(C) (Supp. 2003).
The decision of whether to award treble damages 
 is within the discretion of the trial court.  Rice v. Multimedia, Inc., 
 318 S.C. 95, 98, 456 S.E.2d 381, 383 (1995).  In holding the award of treble 
 damages was discretionary, the court explained, This interpretation accords 
 with the purpose of the Wage Payment Act, to wit:  to protect employees from 
 the unjustified and wilful retention of wages by the employer.  The imposition 
 of treble damages in those cases where there is a bona fide dispute would be 
 unjust and harsh.  Id.   The court cautioned, If there is a dispute 
 over unpaid wages the employer acts at his peril and the court in its discretion 
 may award treble damages when the withholding was unreasonable and there was 
 no good faith wage dispute.  Id.  at 99, 456 S.E.2d at 383.  In Rice, 
 pursuant to its handbook policy, the company refused to pay the employee commissions 
 on seven contracts following his termination.  Id.  at 97, 456 S.E.2d 
 at 382.  The supreme court held the trial court did not abuse its discretion 
 in refusing to award treble damages because there was no evidence the employer 
 acted intentionally and in bad faith.  Id.  at 99-100, 456 S.E.2d at 
 384.
In the present case, it is undisputed that the 
 employees are entitled to the wages they seek.  McGeown was the president and 
 owner of Holiday Network, which suddenly closed its doors leaving its employees 
 without their wages.  We find the trial court did not abuse its discretion in 
 trebling the employees damages.  

d.  Attorneys fees

McGeown argues the trial court awarded attorneys 
 fees without making the necessary findings pursuant to Baron Data Systems, 
 Inc. v. Loter, 297 S.C. 382, 377 S.E.2d 296 (1989) 
 [3] .  McGeown, however, failed to raise to the trial court his concern 
 over a lack of consideration of these factors in the form of a motion to alter 
 or amend the judgment.  We find this issue is not preserved for appellate review.  
 See Wilder v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) 
 (It is axiomatic that an issue cannot be raised for the first time on appeal, 
 but must have been raised to and ruled upon by the trial judge to be preserved 
 for appellate review.); Padgett v. Mercado, 341 S.C. 229, 233, 533 S.E.2d 
 339, 341 (Ct. App. 2000) (stating any argument alleging an inaccuracy or inconsistency 
 in an order must be raised by a post-trial motion).  
 3.     Affidavits and absent employees 
McGeown argues the master-in-equity erred by admitting affidavits 
 and
evidence of absent employees.  We find these issues 
 are not properly before this court.
The trial court admitted the affidavits of employees 
 Regina Brandon and Robert Warham, who were not present at trial, in which the 
 two employees stated the amount of wages owed them.  At trial, McGeowns counsel 
 objected to the admission of the affidavits arguing:  I will have to object 
 just because these individuals are not here and plaintiffs as a general rule 
 cant present their case by way of their own affidavit.  On appeal, however, 
 McGeown argues the affidavits were inadmissible because they were hearsay.  
 A party may not argue one ground for objection at trial and a different ground 
 on appeal.  Murray v. Bank of America, 354 S.C. 337, 347, 580 S.E.2d 
 194, 199 (Ct. App. 2003).  Accordingly, this argument is not preserved.
McGeown also argues the trial court erred in awarding 
 judgments in favor of a number of employees who did not appear to testify at 
 trial.  Although the trial court ruled that these employees could present evidence 
 at a subsequent hearing, no such hearing ever occurred.  McGeown failed to raise 
 to the trial court his objection to the judgments in favor of these employees 
 either during the trial or in a post-trial motion.  Thus, this argument is not 
 preserved.  See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 
 731, 733 (1998)(It is axiomatic that an issue cannot be raised for the first 
 time on appeal, but must have been raised to and ruled upon by the trial judge 
 to be preserved for appellate review.); Pelican Bldg. Ctrs. v. Dutton, 
 311 S.C. 56, 60, 427 S.E.2d 673, 675 (1993) (stating that although the appellant 
 learned for the first time upon receiving the order on a post-trial motion that 
 the respondent would be granted certain additional relief, the appellant must 
 move under Rule 59(e), SCRCP, to alter or amend the judgment to preserve the 
 issue).
CONCLUSION
For the reasons stated above, the trial courts judgment 
 in favor of the employees on their cause of action for promissory estoppel is 
 reversed as to both McGeown and McLaren.  The courts imposition of individual 
 liability under the South Carolina Payment of Wages Act is reversed as to McLaren 
 and affirmed as to McGeown.  
AFFIRMED IN PART and REVERSED IN PART.
ANDERSON, HUFF, and KITTREDGE, JJ., concur.

 
 [1] We decide this case without oral argument pursuant to Rule 
 215, SCACR.

 
 [2]   As we found above McLaren is not liable under 
 the South Carolina Payment of Wages Act, we address the remaining issues as 
 they pertain to McGeown alone.

 
 [3] These factors are:  (1) the nature, extent and 
 difficulty of the legal services rendered; (2) the time and labor necessarily 
 devoted to the case; (3) the professional standing of counsel; (4) the contingency 
 of compensation; (5) the fee customarily charged in the locality for similar 
 legal services; and (6) the beneficial results obtained.  Baron, 297 
 S.C. at 384-85, 377 S.E.2d at 297.