585 S.E.2d 526

**Betty P. O'NEAL, Respondent,**

v.

**INTERMEDICAL HOSPITAL OF SOUTH CAROLINA, Appellant.**

**No. 3646.**

Court of Appeals of South Carolina.

Submitted March 12, 2003.

Decided June 2, 2003.

Rehearing Denied Sept. 9, 2003.

500

Richard J. Morgan and Robyn K. Wietecha, of Columbia, for appellant.

Laura Puccia Valtorta, of Columbia, for respondent.

HUFF, J.:

In this wage payment dispute, the trial court trebled the jury's $1,350 award of damages to plaintiff Betty P. O'Neal and ordered defendant Intermedical Hospital of South Carolina (Intermedical) to pay O'Neal $8,100 in attorney's fees. We affirm in part, and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

O'Neal became employed as a registered nurse for Intermedical on September 21, 1998. O'Neal understood that her base pay was to be $18.36 per hour with "shift differential" pay of an additional $1.50 per hour for night shifts beginning after 11 p.m., and an additional $5.00 per hour for weekend shifts. She further understood that she was required to work every other weekend.

At some point in her employment, O'Neal began complaining to Teri Hooper, who was in charge of Intermedical's payroll, that she was not receiving the proper pay. On March 31, 1999, O'Neal filed a claim against Intermedical with the Department of Labor for approximately $681.61 in wages owed. Specifically, O'Neal asserted that between January 9, 1999 and March 20, 1999, Intermedical improperly withheld wages for 28.18 regular hours at $18.36 per hour, shift differential pay for 17 weekend hours at $5.00 per hour, and shift differential pay for 52.82 night hours at $1.50 per hour.

After an investigation, the South Carolina Department of Labor determined Intermedical failed to comply with the provisions of South Carolina Code Ann. § 41–10–40(D) in that it failed to pay O'Neal $376.09 in wages in accordance with her regular pay schedule.[1] Nonetheless, the Department of Labor ultimately found that as of March 25, 1999, O'Neal had been paid all wages due to her and had in fact been overpaid by $110.77. In August of 1999, the Department of Labor as-

---

1. *South Carolina Code Ann. § 41–10–40(D) (Supp.2002)* provides: "Every employer in the State shall pay all wages due at the time and place designated as required by subsection (A) of § 41–10–30." Subsection (A) of § 41–10–30 provides, inter alia, that "[e]very employer shall notify each employee in writing at the time of hiring ... the time and place of payment...." S.C.Code Ann. § 41–10–30 (Supp.2002).

sessed a $375.00 penalty against the hospital for the late payment of wages.

In April 1999, Virginia Herring, Intermedical's nurse manager, created, posted, and distributed copies of the nurses' working schedule for April 11 through May 9, 1999. Herring scheduled O'Neal to work a number of shifts, including a shift beginning at 11:00 p.m. on Friday, April 23, 1999. By letter dated April 13, 1999, O'Neal complained to Herring that her regular working schedule of two eight hours shifts and two twelve hour shifts had been changed to five eight hour shifts without prior notice. O'Neal also complained that in creating the schedule, Herring failed to consider a prior request for vacation and also improperly "split [her] weekend again" by scheduling her to work on Friday, April 23.

On April 14, Herring and O'Neal met to discuss the concerns O'Neal expressed in her April 13 letter; however, Herring and O'Neal dispute the content of the discussion. According to Herring, the parties did not discuss the 11:00 p.m. April 23 shift during their meeting and Herring did not say or do anything during the discussion to give O'Neal the impression she would remove her from the schedule for April 23. Herring further stated she informed O'Neal she could not guarantee the schedule O'Neal requested in her April 13 letter. O'Neal, on the other hand, asserted, although she remained on the master schedule for April 23, Herring removed her from Herring's personal copy of the schedule and assured her she would "fix" it.

O'Neal told a number of her co-workers that, although her name still appeared on the posted work schedule for the 11:00 shift on April 23, she would not be working that night because she had discussed the matter with Herring and had arranged to have the night off. Based on information the other employees relayed to Herring about these comments, Herring approached O'Neal on the morning of April 23 and informed her she was still on the schedule and was expected to report to work that night. O'Neal responded that she would not report to work because Herring had already given her the night off and because Friday was a weekend night. According to Herring, she explained to O'Neal that the hospital's shift/differential pay policy did not apply to scheduling and Saturday

and Sunday were weekend days for scheduling purposes. O'Neal argued that Friday night shifts constituted weekend work according to the hospital's policy. Herring reiterated that she expected O'Neal to report to work that night and inquired whether O'Neal was refusing to do so. O'Neal confirmed that she would not report to work that night. Herring again told O'Neal she expected her to report to work that night. O'Neal replied, "You do what you gotta do and I'll do what I gotta do."

O'Neal did not, in fact, work on April 23. On April 28, 1999, Herring called O'Neal in for a conference, at which time she informed O'Neal her employment with Intermedical was being terminated for insubordination, refusal to work a scheduled shift, and unexcused absence from work.

O'Neal instituted the instant action against Intermedical on June 1, 1999, alleging (1) wrongful discharge in retaliation for filing a claim with the Department of Labor; (2) nonpayment of wages earned during the employment relationship including weekend shift differentials, overtime work, night hours, and regular hours; (3) and nonpayment of 138.42 hours of accrued time off pay due upon her discharge from employment. O'Neal also sought an award of attorney's fees and costs. Intermedical answered, denying O'Neal was entitled to any of the relief requested in her complaint. Intermedical also affirmatively asserted that it acted at all times in good faith and that O'Neal's own conduct caused all adverse employment action taken against her.

Prior to trial, Intermedical sought and was granted leave to amend its pleading to include, as an additional affirmative defense, the assertion that O'Neal breached her duty of loyalty to the hospital.[2] Intermedical also moved for summary judgment on O'Neal's claim for wrongful discharge. The trial court granted the motion and the trial proceeded on the actions for (1) nonpayment of wages due during the employment relationship and (2) nonpayment of wages due at the time of termination.

---

2. Intermedical also sought leave to amend its pleadings to include breach of duty of loyalty as a counterclaim. The trial court declined to allow the amendment for purposes of asserting a counterclaim.

At trial, O'Neal asserted the hospital shorted her 28.18 hours of regular pay at $18.36 an hour, 17 hours of weekend pay at $5.00 an hour, and 52.82 hours of night pay at $1.50 an hour, for a total due of $681.61. She also sought 138.42 hours of accrued time off at $18.36 an hour, for a total of $2,541.39. Intermedical took the position that although it failed to pay O'Neal all of her wages in a timely manner, the hospital had, by the time of her discharge, paid O'Neal all of the wages she was due during her employment at the hospital, including shift differential pay. Intermedical did not dispute that O'Neal had accrued 138.42 hours of time off for which she was not paid at the time of her discharge. The hospital sought to establish, however, that O'Neal was terminated for misconduct, in which case the hospital's policy prohibits payment for accrued time off. In attempting to establish that O'Neal's misconduct warranted her termination, Intermedical introduced evidence relating to her failure to work her scheduled shift on April 23, 1999, as well as other incidents such as "nodding off" at work and being unfriendly to co-workers.

At the close of evidence, Intermedical requested that the trial court give the following charge to the jury (Defendant's Request to charge No. 10):

It is not for you to judge the wisdom or reasonableness of any of [Intermedical's] business decisions. You cannot require an employer to use business practices or policies you prefer or like, nor is it your role to second-guess or substitute your judgment for [Intermedical's] judgment.

Likewise, it was [Intermedical's] prerogative and right, not [O'Neal's], to establish relevant criteria and expectations regarding performance for any work that [O'Neal] might have performed, if any, for [Intermedical].

The trial court's charge to the jury did not include the requested language; however, the court charged the jury as follows:

Among the fundamental duties of the employee is the obligation to yield obedience to all reasonable rules, orders, and instructions of the employer and willful or intentional disobedience as a general rule justifies dismissal of the employee.

The employee is bound to obey all of the employer's lawful and reasonable commands even though such commands may under the circumstances seem harsh and severe, but the employer has a right to manage his own affairs and to establish and enforce any lawful and reasonable policies and instructions and it must be a very extreme case in which an employee would be justified in refusing to obey those orders.

Intermedical objected to the trial court's failure to include the requested charge. The trial court noted the exception, but declined to recharge the jury, reasoning that the court's original charge sufficiently encompassed the requested language.

The jury returned a $1,350 verdict in favor of O'Neal for wages owed after discharge, but found in favor of Intermedical on the action for wages due during the period of employment.

After the jury returned its verdict, O'Neal moved for attorney's fees and treble damages. By order dated March 9, 2001, the trial court granted both motions, trebling the damage award to $4,050 and ordering Intermedical to contribute $8,100 toward O'Neal's $9,112.50 attorney's fees bill. This appeal followed.

## LAW/ANALYSIS

I. Jury Charge

Intermedical asserts the trial court erred in failing to instruct the jury in accordance with Defendant's Request to Charge No. 10. Specifically, Intermedical argues the trial court's charge to the jury did not adequately instruct the jury as to its obligation to apply and enforce Intermedical's policies regardless of personal preferences or opinions, thereby creating the opportunity for the jury to judge the hospital's policy on nonpayment for accrued time off to employees terminated for misconduct. We disagree.

"The trial judge is required to charge only the current and correct law of South Carolina." *McCourt v. Abernathy,* 318 S.C. 301, 306, 457 S.E.2d 603, 606 (1995). Further, "[r]efusal to give a properly requested charge is not error if the general instructions are sufficiently broad to

enable the jury to understand the law and the issues involved." *Id.*

Intermedical cites two federal cases involving employment discrimination in support of its requested jury charge. In *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Supreme Court, in discussing the Seventh Circuit Court of Appeals' decision regarding employer hiring procedures, stated, "Courts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it." In *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989), the Court of Appeals, citing *Furnco*, stated, "We have no authority simply to require employers to use the 'best' standards and procedures available to them." Neither of these cases embrace the specific law as proposed in Intermedical's request to charge. Intermedical cites no South Carolina law supporting such a charge.

Further, even if we were to assume the proposed charge was the correct and current law of South Carolina, we find no error. Although the trial court refused to instruct the jury in exact accordance with Intermedical's request to charge, the court explicitly instructed the jury that an employee is "bound to obey all of the employer's lawful and reasonable commands even though such commands may under the circumstances seem harsh and severe." The court further instructed the jury that "the employer has a right to manage his own affairs and to establish and enforce any lawful and reasonable policies and instructions ..." In our view, the court's instructions to the jury sufficiently conveyed the concepts that an employer has the right to establish and enforce any lawful and reasonable business policies, and an employee is obligated to obey the employer, even if an employer's commands or policies seem harsh or severe. Accordingly, we find the instructions were sufficiently broad to enable the jury to understand the law and the issues involved.

## II. Treble Damages

Intermedical also argues the trial court erred in awarding O'Neal treble damages. We agree.

Section 41–10–80(C) of the South Carolina Wage Payment Act provides in part:

> In case of any failure to pay wages due to an employee as required by Section 41–10–40 or 41–10–50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow.

S.C.Code Ann. § 41–10–80(C) (Supp.2002).

In interpreting this section, our Supreme Court has held that the statute's explicit provision that the employee "may" recover treble damages signifies permission, which generally means that the action spoken of is optional or discretionary. The court went on to state as follows:

> Thus, by using "may", rather than "shall", the legislature has provided that the penalty is discretionary with the judge. This interpretation accords with the purpose of the Wage Payment Act, to wit: to protect employees from the unjustified and wilful retention of wages by the employer. *The imposition of treble damages in those cases where there is a bona fide dispute would be unjust and harsh.*

*Rice v. Multimedia, Inc.,* 318 S.C. 95, 98, 456 S.E.2d 381, 383 (1995) (emphasis added) (citations omitted).

Subsequent to *Rice,* our Supreme Court considered the wage withholding case of *Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 518 S.E.2d 591 (1999). Futch was employed by McAllister Towing (Employer) as a tugboat captain and local manager of its operations in Georgetown. After Employer informed Futch his job would terminate at the end of 1993, Futch, who knew Employer considered ceasing operations in the area, began making plans with a co-worker to start their own tugboat business. After learning of Futch's plans, Employer fired Futch and refused to pay him $4,200 in monthly commissions Futch had earned. Futch brought an action against Employer seeking $4,200, as well as treble damages and attorney's fees, under the Wage Payment Act. The jury awarded Futch the full $4,200 sought, and the trial judge trebled the damages and awarded Futch attorney's fees. On appeal, this court reversed, holding the trial judge should have granted Employer's directed verdict motion. The Supreme Court granted certiorari and reversed this court,

reinstating the jury verdict. The court, however, declined to reinstate the award of treble damages and attorney's fees finding there was a bona fide dispute about whether Employer owed Futch any wages. In support of its decision, the court cited *Rice* for the proposition that the "imposition of treble damages in cases where there is a bona fide dispute would be unjust and harsh, and [the] Legislature did not intend to deter litigation of reasonable good faith wage disputes." *Futch*, 335 S.C. at 612, 518 S.E.2d at 598.

In determining the imposition of treble damages was proper in the instant case, the trial court reasoned:

> The Court finds the issue of whether [Intermedical] acted in good faith and terminated [O'Neal] for cause was submitted to the jury. The jury determined that [O'Neal] was entitled to recover accrued time off and awarded her a verdict. The jury therefore determined [Intermedical] did not terminate [O'Neal] for cause and thus no good faith basis for refusal to pay benefits was established. Accordingly, the Court hereby trebles the jury verdict to $4,050.00.

The jury's verdict in favor of O'Neal does not lend itself to the interpretation espoused by the trial court. As evidenced by the decisions in *Futch* and *Rice*, a finding that an employee is entitled to recover unpaid wages is not equivalent to a finding that there existed no bona fide dispute as to the employee's entitlement to those wages. Further, Intermedical did not dispute the number of time off hours O'Neal had accrued at the time she was terminated. Nonetheless, the jury awarded her damages equal to payment for only a portion of those hours, indicating the jury determined that Intermedical properly withheld payment for the remaining portion of accrued hours. The jury's finding in this regard belies the trial court's determination that, based on the award of damages, the jury necessarily determined that Intermedical failed to establish a good faith basis for refusal to pay the wages at the time of O'Neal's discharge from employment. Therefore, to the extent the trial court found the jury's verdict was equivalent to a finding that no bona fide dispute existed, such finding was erroneous.

At any rate, our reading of the record convinces us a bona fide dispute existed as to whether and to what extent

O'Neal was entitled to payment for accrued time off. *See The Father v. South Carolina Dep't of Soc. Servs.*, 353 S.C. 254, 578 S.E.2d 11 (2003) (holding, where the decision to impose sanctions is to be decided by a judge and not a jury, it sounds in equity rather than law such that the South Carolina Constitution mandates the appellate court take its own view of the facts). It is undisputed Intermedical's policy was to refuse payment for accrued time off to employees terminated for misconduct, and O'Neal does not contest the validity of the policy itself. The parties offered contradictory testimony as to whether Herring ever agreed to remove O'Neal from the schedule for April 23, 1999. It is undisputed, however, that prior to the scheduled shift, Herring made clear to O'Neal that she was expected to report to work at the scheduled time and O'Neal made a conscious decision not to do so. Further, the parties expressed conflicting interpretations of the definition of "weekend hours" for purposes of determining whether the terms and conditions of O'Neal's employment obligated her to work on the disputed date. Thus, we find there existed at least a bona fide dispute as to whether O'Neal was terminated for misconduct and, concomitantly, a bona fide disagreement as to whether she was entitled to payment for accrued time off. Again, the propriety of treble damages under the Wage Payment Act turns not on whether an employer is successful in defending against a suit for nonpayment of wages, but whether there existed a bona fide dispute concerning payment of the wages.

Accordingly, the trial court's award of treble damages is reversed and the jury's original award of damages reinstated.

III. Attorney's Fees

■ Finally, Intermedical asserts error in the award of attorney's fees to O'Neal. It argues there was a good faith dispute as to the wages due O'Neal and therefore O'Neal was not entitled to attorney's fees. Intermedical further argues, even if O'Neal was entitled to collect some attorney's fees, the lower court awarded her an excessive amount based on the various factors for awarding attorney's fees.

We agree with Intermedical that there was a bona fide dispute as to whether Intermedical owed O'Neal any wages

such that the imposition of the award of attorney's fees was also improper pursuant to *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 518 S.E.2d 591 (1999) and *Rice v. Multimedia, Inc.*, 318 S.C. 95, 456 S.E.2d 381 (1995).

## CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed as to the jury charge, and reversed as to the award of treble damages and attorney's fees.

**AFFIRMED IN PART AND REVERSED IN PART.**

ANDERSON, J., and MOREHEAD, A.J., concur.