**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-2091

DARRELL WALL,

Plaintiff - Appellee,

versus

FRUEHAUF TRAILER SERVICES, INCORPORATED, a
subsidiary of Wabash National Corporation,

Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Greenville.  Terry L. Wooten, District Judge.
(CA-01-1959-6-25)

Argued:  September 29, 2004       Decided:  February 24, 2005

Before MICHAEL and MOTZ, Circuit Judges, and Roger W. TITUS, United
States District Judge for the District of Maryland, sitting by
designation.

Affirmed by unpublished opinion.  Judge Titus wrote the opinion, in
which Judge Michael and Judge Motz joined.

**ARGUED:** Richard James Morgan, MCNAIR LAW FIRM, P.A., Columbia,
South Carolina, for Appellant.  Justin Marshall Grow, Greenville,
South Carolina, for Appellee.  **ON BRIEF:** Reginald W. Belcher,
MCNAIR LAW FIRM, P.A., Columbia, South Carolina, for Appellant.
Brian P. Murphy, Greenville, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

TITUS, District Judge:

On March 12, 2001, Darrell Wall ("Wall") filed a complaint in the Court of Common Pleas for the County of Greenville, South Carolina alleging that Fruehauf Trailer Services, Inc. ("Fruehauf") violated the Payment of Post-Termination Claims to Sales Representatives Act, S.C. Code Ann. §§ 39-65-10, et seq. (Supp. 1999), and breached its contract with Wall when it refused to pay Wall sales commissions. Fruehauf removed the case to the United States District Court for the District of South Carolina, Greenville Division, on April 11, 2001. On February 27, 2002, the District Court[1] granted leave to Wall to file a Second Amended Complaint which would replace Wall's claim under §§ 39-65-10, et seq., with a claim under the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, et seq. (Supp. 2003), and a claim for treble damages pursuant to §§ 41-10-80(C). On March 13, 2002, Wall filed his Second Amended Complaint. After a trial, the jury returned a $35,000 verdict in favor of Wall on February 11, 2003. On July 25, 2003, the District Court awarded Wall treble damages, attorney's fees and costs pursuant to §§ 41-10-80(C).

In its appeal, Fruehauf challenges the following actions of District Court: (1)the Order granting Wall's Motion To File Second Amended Complaint; (2) the decision to retain diversity

---

[1]The order granting leave for the filing of a Second Amended Complaint was entered for the District Court by a Magistrate Judge.

jurisdiction over the case after Wall voluntarily dismissed his claim for violation of §§ 39-65-10, et seq.; (3) the decision to award Wall treble damages, attorney's fees and costs; (4) the admission of the testimony of Mike Dodson; (5) the interpretation of §§ 41-10-10, et seq. For the reasons set forth below, we affirm.

## I.

Wall was employed by Fruehauf (or its predecessor companies) from September 1994 until September 2000 selling new and used trailers. Fruehauf compensated Wall with a base salary and commissions based on Fruehauf's gross profit margin on his sales. According to Fruehauf, beginning in 1996, the company limited the maximum commissions per year to $50,000 per account. Fruehauf's position is that this limitation was distributed in writing to all salespersons, including Wall, on two separate occasions in 1996. However, Wall maintains that Fruehauf never informed him of this limit on commissions.

In 1999, Wall earned $77,316.85 in commissions from the purchase of trailers by D. M. Kaye and Sons Transport, and Fruehauf paid him all of the commissions to which he was entitled in the absence of the $50,000 limitation. During the first part of 2000, Fruehauf discovered that it had overpaid Wall for his 1999 earned commissions in the amount of $35,000. Thus, Fruehauf incrementally

3

withheld approximately $27,000 from subsequent commissions Wall earned in 2000. Additionally, Fruehauf deducted $8,000 from commissions earned on other accounts in 2000. Wall asserts that this deduction for excess commissions was the first time in history that Fruehauf had enforced its alleged cap on commissions.

After Fruehauf removed the complaint filed by Wall in the Court of Common Pleas for the County of Greenville, South Carolina to the United States District Court for the District of South Carolina, Greenville Division, an initial scheduling order was issued on September 5, 2001 which, among others, prohibited the parties from amending the pleadings after June 11, 2001. This scheduling order deadline was later extended by the Court until October 9, 2001. Discovery ended on January 15, 2002 and trial was scheduled to begin on April 11, 2002.

During Wall's deposition, he testified that he had, on occasion, sold tractor trailers to independent owners. As a result, he no longer fit the definition of a sales representative under the Payment of Post-Termination Claims to Sales Representatives Act, S.C. Code Ann. §§ 39-65-10 et seq. Lee v. Thermal Eng'g Corp., 572 S.E.2d 298, 304 (S.C. Ct. App. 2002).[2]

_____

[2]Section 39-65-10(4) only provides relief to a sales representative who:

(a) contracts with a principal to solicit wholesale orders;
(b) is compensated, in whole or in part, by commission;
(c) does not place orders for purchases for his own account or for resale; and

After completing discovery and after a status conference held on January 31, 2002, Wall sought leave to amend his complaint to replace his claim under §§ 39-65-10, et seq. with a cause of action alleging a violation of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, et seq.[3]  On February 27, 2002, the District Court granted the motion, reopened discovery and ordered Wall to pay all of Fruehauf's discovery costs associated with investigating the amended claim.

The case went to trial on February 10, 2003, a full year after Wall filed his Second Amended Complaint.  On February 11, 2003, the jury returned a verdict for Plaintiff in the amount of $35,000.  On February 26, 2003, Wall moved for an order granting treble damages, attorney's fees and costs pursuant to § 41-10-80(C).  On July 25, 2003, the trial court granted Wall's motion and awarded treble damages in the amount of $105,000.00, with interest at the rate of 1.13 %, plus attorney's fees and costs.

---

(d)  *does not sell* or take orders for the sale of products *to the ultimate consumer*. (emphasis added)

[3]Unlike the Payment of Post-Termination Claims to Sales Representatives Act, the South Carolina Payment of Wages Act does not require that Wall not have sold products to the ultimate consumer. S.C. Code Ann. § 41-10-40(C) provides simply that employers "shall not withhold or divert any portion of an employee's wages unless...the employer has given written notification to the employee of the amount and terms of the deductions..."

5

II.

Fruehauf argues that the District Court erred in the following ways: (1)it permitted Wall to file a Second Amended Complaint after the close of discovery without establishing good cause pursuant to Federal Rule of Civil Procedure 16(b) and causing prejudice to the Defendant in violation of Federal Rule of Civil Procedure 15(a); (2)it permitted Wall to file a Second Amended Complaint after he had admitted that he could not prove the elements of the claim in his Amended Complaint; and (3)it retained jurisdiction over Wall's claim, despite the "dismissal" of the claim under the Payment of Post-Termination Claims to Sales Representatives Act, S.C. Code Ann. § 39-65-10 which, Fruehauf argues, destroyed federal jurisdiction over the claim by reducing the amount in controversy.[4]

This Court reviews a district court's decision to grant leave to amend and the decision to retain jurisdiction of a claim under an abuse of discretion standard. See Foman v. Davis, 371 U.S. 178, 182 (1962); Shanaghan v. Cahill, 58 F.3d 106, 112-13 (4th Cir. 1995). This standard "mandates a significant measure of appellate

_____

[4]At several points in its brief, Fruehauf refers to the "dismissal" of a claim asserted by Wall under § 39-65-10. The District Court did not "dismiss" the claim. When the Second Amended Complaint was filed, it had the effect of superseding the earlier complaint (which contained the claim under § 39-65-10) which "no longer performs any function in the case." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice And Procedure § 1476. (2d ed. 1990). After the Second Amended Complaint was filed, the District Court granted a previously filed motion for summary judgment as to the § 39-65-10 claim, but this action was a nullity because that claim was no longer before the Court.

6

deference to the judgment calls of trial courts." <u>United States v. Pittman</u>, 209 F.3d 314, 316 (4th Cir. 2000).

A.    Leave to File Second Amended Complaint

Federal Rule of Civil Procedure 16(b) provides that a scheduling order devised by the District Court "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge."  This Court has noted that scheduling orders "are not set in stone, but may be relaxed for good cause, extraordinary circumstances, or in the interest of justice." <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946, 954 (4th Cir. 1984).  Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading has been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."   Furthermore, leave to amend is a liberal standard and will not be denied unless the amendment will cause actual prejudice to the adverse party.   See <u>Ward Elecs. Serv., Inc. v. First Commercial Bank</u>, 819 F.2d 496, 497 (4th Cir. 1987) (holding that a change in the theory of recovery and one prior amendment is not sufficient to deny a motion to amend the complaint where no evidence of bad faith existed).

Here, the District Court properly exercised its discretion in determining that good cause existed to permit Wall to amend his complaint, pursuant to Federal Rules of Civil Procedure 16(b) and

7

15(a). Wall moved to file a Second Amended Complaint immediately after his counsel learned that a minor portion of his sales activities involved selling trailers to independent owners/operators, an activity that is not covered under S.C. Code Ann. § 39-65-10.

Furthermore, Fruehauf did not suffer any prejudice as a result of the amendment. The trial court reopened discovery, permitting Fruehauf to depose Wall a second time, and ordered Wall to pay all of Fruehauf's associated discovery costs. Moreover, the amendment did not substantively change the claim, only the statute under which the claim proceeded. Both before and after the amendment, the suit was a claim for the same unpaid commissions. Principles of judicial economy would have been sacrificed had Wall not been permitted to amend his complaint because it would have forced Wall to litigate an entirely new and separate action based on the same set of facts under the new statute. Rowe v. United States Fid. & Guar. Co., 421 F.2d 937, 943 (4th Cir. 1970)("the fact that the supplemental pleading technically states a new cause of action should not be a bar to its allowance.") We find no abuse of discretion in the District Court's decision to permit Wall to file a Second Amended Complaint.

B. Diversity Jurisdiction

Fruehauf next argues that the trial court erred when it retained jurisdiction over Wall's case after he had "dismissed" his

claim under S.C. Code Ann. § 39-65-10.[5]  Fruehauf argues that the "dismissal" of Wall's claim under §§ 39-65-10, et seq., destroyed subject matter jurisdiction under 28 U.S.C.A. § 1332(a), because without the ability to prove a necessary element of that statutory claim, Wall had no longer asserted a claim that caused the amount in controversy to exceed $75,000.[6]  However, as Wall correctly points out in his brief, his claim under §§ 39-65-10, et seq. was simultaneously replaced with a claim under S.C. Code Ann. §§ 41-10-10, et seq., which permits a court to award treble damages to an employee who has not been justly compensated, thereby increasing the amount in controversy from the unpaid commissions of $35,000 to $105,000.  Thus, the amount in controversy requirement was met and subject matter jurisdiction was maintained.  See Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933)(holding that where a state statute provides for the award of attorney's fees, those fees can be considered as part of the amount in controversy for the purpose of determining federal diversity jurisdiction).  Even if we were to find that the treble damages provision of §§ 41-10-10 was not sufficient to cause the Second Amended Complaint to satisfy the jurisdictional requirement of

---

[5]As noted above in footnote 4, the claim under § 39-65-10 was not "dismissed."  Rather, the claim was replaced with a claim under § 41-10-10 which superseded the earlier claim.

[6]Section 39-65-10 provides for the award of punitive damages, making the possible amount in controversy in excess of $75,000.

9

28 U.S.C.A. § 1332(a), Plaintiff's initial claim under §§ 39-65-10, et seq. was made in good faith and the District Court had the discretion to retain any residual claims. Shanaghan, 58 F.3d at 112; St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938).[7]

### III.

Fruehauf also appeals the trial court's decision to award Wall treble damages and attorney's fees on the ground that the trial court erroneously relied exclusively on the testimony of Wall's former General Manager Ned Armstead ("Armstead"). The trial court's decision to award Wall treble damages, attorney's fees and costs is reviewed under an abuse of discretion standard. See Rice v. Multimedia, Inc., 456 S.E.2d 381, 384 (S.C. 1995).

Fruehauf argues that the District Court erred when it awarded Wall treble damages and attorney's fees, relying solely on Armstead's redirect testimony that, in Fruehauf's opinion, contradicted his deposition and trial cross-examination testimony.

---

[7]Furthermore, as Appellee correctly points out in his brief, even if the Second Amended Complaint did not meet the required amount in controversy for diversity jurisdiction under 28 U.S.C.A. § 1332(a), the doctrine of supplemental jurisdiction would permit the trial court in this instance to retain jurisdiction over this case. 28 U.S.C.A. 1367; Shanaghan, 58 F.3d 106, 110 (4th Cir. 1995)(citation omitted)(indicating that the doctrine of supplemental jurisdiction is "designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values").

10

We disagree. Fruehauf argues that on redirect examination at trial, Wall's general manager, Armstead, testified that he was not aware of a commissions cap, whereas in his deposition, Armstead testified that the commissions cap was a company-wide policy that was never rescinded.

First, a trial judge is given a considerable amount of latitude about what credibility to assign the testimony of one witness over another, especially considering the fact that the trial judge is much closer to the actual testimony than the appellate court. United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994). Furthermore, in the trial court's July 25, 2003 Order granting Wall treble damages, the court listed a number of factors on which it based its decision, including the following: Fruehauf initially paid Wall the full balance of his commission; Armstead testified that he was not aware of a cap on sales commissions; Fruehauf failed to provide clear evidence that Wall received a written memorandum notifying the salesperson of a cap on sales commissions; the salesperson hired to replace Wall, Mike Dodson, was not notified of a sales commissions cap; Fruehauf withheld undisputed commissions from Wall's pay; and Fruehauf failed to adhere to the notification requirements of the South Carolina Payment of Wages Act. Therefore, the argument that the trial court abused its discretion by only considering Armstead's inconsistent testimony is without merit.

11

IV.

Fruehauf also challenges the District Court's evidentiary ruling admitting the testimony of Mike Dodson ("Dodson"), the salesperson who assumed Wall's position after he left Fruehauf, on the grounds that the testimony was irrelevant and impermissible hearsay. We review an evidentiary ruling of a trial court for an abuse of discretion and find no abuse here. United States v. Abel, 469 U.S. 45, 54-55 (1984).

We first note that Fruehauf never made any specific hearsay objection to any part of Dodson's testimony; therefore it cannot be raised now because Fruehauf has failed to properly present this issue for review.[8] For that reason alone, the District Court's ruling on this issue can be affirmed. However, if the issue had been preserved, the ruling would still be affirmed because the District Court did not abuse its discretion in admitting the testimony.

First, Fruehauf argues that the District Court erred in admitting Dodson's testimony because it was irrelevant. Federal Rule of Evidence 401 defines relevant evidence as any evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

_____

[8]Fruehauf did file a motion in limine to exclude this testimony, but the motion was overruled by the District Court. "[A]n overruled motion in limine does not preserve error on appeal." Rojas v. Richardson, 703 F.2d 186, 189 (5th Cir. 1983).

12

less probable than it would be without the evidence." Fed. R. Evid. 401. Dodson, Wall's immediate replacement, testified as to Fruehauf's compensation policy. Fruehauf argues that because Dodson was not employed by Fruehauf during the relevant time period, his testimony as to Fruehauf's compensation policy is inadmissible; however, as Wall points out, Dodson was his immediate replacement. The fact that Dodson testified that he was not made aware of any commission ceiling is relevant to whether or not Fruehauf had, in fact, established such a policy.

Second, Fruehauf argues that Dodson's testimony was inadmissible hearsay. The Federal Rules of Evidence define hearsay as a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801. Dodson did not testify to any out of court statements, but only testified that, to his knowledge, no sales commissions cap was in existence at the time that he was hired. Furthermore, as Wall asserts, any possible hearsay statements to which Dodson would have testified would have been made to him by one of Fruehauf's representatives within the context of its employment relationship with Dodson. Therefore, any statements that were hearsay statements would be excepted from operation of the rule as an admission of a party opponent. Fed. R. Evid. 801(d)(2)(D).

13

V.

Finally, Fruehauf argues that the District Court erred in its interpretation of South Carolina law concerning the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, et seq., when it awarded Wall treble damages and attorney's fees. The District Court's decision to award treble damages, attorney's fees and costs is reviewed for an abuse of discretion. See Rice, 456 S.E.2d 381, 384 (S.C. 1995).

Section 41-10-40 (C) of the South Carolina Payment of Wages Act provides that employers "shall not withhold or divert any portion of an employee's wages unless...the employer has given written notification to the employee of the amount and terms of the deductions..."[9]

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow.

§ 41-10-80(C).

The South Carolina Supreme Court has interpreted this treble damages provision to mean that the decision to award the penalty of treble damages is discretionary, and the penalty should not be

---

[9]Furthermore, the Act requires that the employers "notify each employee in writing at the time of hiring of ...the deductions which will be made from [their] wages," and "[T]he employer has the option of giving written notification by posting the terms conspicuously at or near the place of work." § 41-10-30 (A). "Any changes in these terms must be made in writing at least seven calendar days before they become effective." Id.

14

imposed "if there is a good faith dispute over wages allegedly due." Rice, 456 S.E.2d at 383. Fruehauf asks us to extend the requirement that there be a bona fide, good faith wage dispute to require that Wall show that Fruehauf *willfully* failed to pay Wall's commissions or did so in *bad faith* in order to receive treble damages. We disagree and find that the trial court's interpretation was not an abuse of discretion.

South Carolina case law does not support Fruehauf's position. Fruehauf cites to a number of cases which discuss punitive damages in general, but not treble damages under § 41-10-80(C). See, e.g., Carter v. R.C. Jordan Oil Co., 390 S.E. 2d 367, 368 (S.C. Ct. App. 1990). Although South Carolina law requires that there be no good faith dispute concerning the wages due in order for treble damages to be awarded under § 41-10-80(C), the decision is in the complete discretion of the trial court and no specific finding of bad faith or willfulness is required. Rice, 456 S.E.2d 381 (S.C. 1995) (holding that the treble damages provision is not mandatory and will not apply if the trial court determines that a good faith dispute over the wages allegedly due exists); Futch v. McAllister Towing of Georgetown, Inc., 518 S.E.2d 591 (S.C. 1999) (holding that an employee who breaches the duty of loyalty to his employer forfeits his right to compensation and creates a good faith dispute over the payment of his wages by virtue of his bad behavior); O'Neal v. Intermedical Hospital of South Carolina, 585 S.E.2d 526

15

(S.C. Ct. App. 2003) (holding that the award of treble damages, while a matter of discretion for the trial court, is inappropriate in circumstances where there is a bona fide wage dispute).

Here, the District Court specifically addressed the question of whether a good faith dispute existed over the payment of Wall's wages and determined that based on all of the evidence presented, no dispute existed. The evidence considered by the trial court included that: Fruehauf failed to put its employees on notice of the commission cap as required by § 41-10-30(A); Fruehauf initially paid Wall the "disputed" commission and later deducted the "disputed" amount from Wall's subsequent, undisputed commissions; Armstead, Wall's General Manager, was not aware of any $50,000 cap on commissions; Armstead, after research, determined that the commission cap did not apply to Wall's position; Wall's replacement, Dodson, was never informed of any commission cap.

The trial court is in the best possible position to evaluate the credibility of all the evidence before it and make a determination over whether a good faith dispute existed as to the treble damages. The District Court carefully evaluated all of the evidence before it and we find no abuse of discretion regarding its interpretation of South Carolina law.

AFFIRMED

16