**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Ronald Johnson, Respondent,

v.

George H. Brock, Individually and d/b/a George H. Brock, CPA, LLC; MILBRO Properties, LLC; Integrative FS, LLC; Diwood Partnership, Appellants.

Appellate Case No. 2018-000884

---

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

---

Unpublished Opinion No. 2021-UP-379
Heard December 9, 2020 – Filed November 3, 2021

---

**AFFIRMED IN PART, VACATED IN PART**

---

J. Falkner Wilkes, of Greenville, for Appellants.

Scarlet Bell Moore, of Greenville, and Kenneth Edward Norsworthy, Jr., of Greer, both for Respondent.

---

**PER CURIAM:** In this action for breach of contract and failure to pay wages, George H. Brock, individually, and d/b/a George H. Brock CPA, LLC; MILBRO

Properties, LLC; Integrative FS, LLC; and Diwood Partnership[1] (collectively, Appellants) argue the circuit court erred in denying their motions for judgment notwithstanding the verdict (JNOV) and a new trial. Appellants further assert the circuit court erred in awarding Ronald Johnson attorney's fees and costs under the South Carolina Payment of Wages Act.[2] We affirm the circuit court's denial of the motions for JNOV and a new trial but vacate the award of attorney's fees and costs.

Pursuant to an oral agreement, Brock hired Johnson to work at George H. Brock, CPA, LLC (the Firm) in February 2015. Brock agreed to pay Johnson thirty dollars per hour through the end of 2015 to prepare tax returns, address various client tax problems, and research tax code issues. As the 2015 tax season approached, Johnson informed Brock that he anticipated some friends, family members, and former clients would contact him to prepare their tax returns. According to Johnson, Brock stated that if new clients came to the Firm as a result of Johnson's employment, Brock would pay him eighty percent of those invoices for the first year, and thereafter, Brock would not owe Johnson further additional payment regarding these clients (80% Clients). However, Brock testified his understanding was that he was only required to pay Johnson if any of the 80% Clients returned in 2016; only one returned, from whom Brock received $300 in fees.

Johnson meticulously tracked the 80% Clients on his weekly timesheets. According to Johnson, Brock delayed paying him, and at some point could not afford to pay him; however, Brock claimed he timely paid Johnson for all timesheets he submitted. Johnson testified he discussed this issue with Brock in late 2015, at which time Brock agreed to pay $9,036 he owed Johnson, but Brock would not commit to a time for payment. After Johnson subsequently demanded payment in writing, Brock telephoned Johnson admitting he understood about the "9,000 thing being due" and committed to pay Johnson by the end of April 2016.

---

[1] Johnson did not have a written employment agreement, commission agreement, or contract with MILBRO, Diwood, or Integrative—corporations Brock owns or in which he has a partial interest.

[2] S.C. Code Ann. §§ 41-10-10 to -100 (2021); *see also* section 41-10-80(C) (providing for treble damages and attorney's fees "as the court may allow" in a case involving an employer's failure to pay an employee's wages as required by the Act).

In 2015, Brock began attempting to sell the Firm as part of his plan to retire. Brock testified Johnson began undermining the sale efforts in an attempt to coerce Brock to pay him. Brock claimed Johnson stole a tax software package and ten years of data; stole confidential client information; sent solicitous letters to clients seeking to individually obtain their work; and revealed confidential information to Gary Wheeler, another local CPA.

Stephan Stokes, who ultimately purchased Brock's book of business, testified that while he was considering the purchase, Wheeler told him of Johnson's payment dispute with Brock. Stokes discussed these concerns with Brock, and although the sale negotiations were put on hold for a time, Stokes noted they "didn't necessarily say we're putting [the sale] on hold for any reason." Despite Brock's own testimony that the negotiations were on hold due to the arrival of tax season, Brock alleges he lost the opportunity for an "up-front" cash sale of the Firm to Stokes for $370,000 and that the 2016 contract resulted in a loss of $67,000 from the 2015 price originally contemplated.

The case went to the jury on Johnson's breach of contract cause action and statutory wage claim, as well as Brock's counterclaim for intentional interference with prospective contractual relations. The jury awarded Johnson $9,036 in actual damages and awarded Brock "zero actual damages and zero punitive damages" on the counterclaim. Johnson filed a post-trial motion for treble damages and attorney's fees and costs under the Payment of Wages Act; Brock moved for JNOV and a new trial. The circuit court awarded Johnson attorney's fees and costs and denied all remaining motions. In its order on post-trial motions, the circuit court declined to award treble damages, finding "the evidence indicated that there was a good faith dispute regarding the monies that were due." The circuit court denied Appellants' motion to alter or amend the judgment as to attorney's fees and costs. We affirm in part and vacate in part pursuant to Rule 220(b), SCACR, for the reasons set forth below.

1.      Evidence supports the jury's finding that Brock failed to pay Johnson wages due pursuant to their employment relationship and agreement that Brock would pay Johnson an additional percentage for the 80% Clients. Thus, the circuit court did not err in denying Appellants' motion for JNOV on Johnson's wage claim. *See Abraham v. Palmetto Unified Sch. Dist. No. 1*, 343 S.C. 36, 50, 538 S.E.2d 656, 664 (Ct. App. 2000) (finding the Payment of Wages Act, §§ 41-10-10 to -100, "is remedial legislation designed to protect working people and assist them in collecting compensation wrongfully withheld" (quoting *Dumas v. InfoSafe Corp.*, 320 S.C. 188, 194, 463 S.E.2d 641, 645 (Ct. App. 1995))); § 41-10-10 (defining

"wages" as "all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount . . . which are due to an employee under any employer policy or employment contract"). Further, the agreement between Johnson and Brock did not violate South Carolina's Statute of Frauds. *See* S.C. Code Ann. § 32-3-10 (2007) ("No action shall be brought whereby: . . . . (5) To charge any person upon any agreement that is not to be performed within the space of one year from the making thereof; Unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some person thereunto by him lawfully authorized."); *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 894 (1989) (noting an oral agreement, including an oral modification, will not be barred by the Statute of Frauds if it is capable of being performed within one year).[3]

2.      Evidence in the record supports the circuit court's denial of Appellants' "thirteenth juror" motion. *See First S. Bank v. S. Causeway, LLC*, 414 S.C. 434, 452, 778 S.E.2d 493, 502 (Ct. App. 2015) ("South Carolina's thirteenth juror doctrine allows the circuit court judge to grant a new trial absolute when the judge finds the evidence does not justify the verdict." (quoting *Trivelas v. S.C. Dep't of Transp.*, 357 S.C. 545, 551, 593 S.E.2d 504, 507 (Ct. App. 2004))); *id.* ("The effect is the same as if the jury failed to reach a verdict, and thus, the circuit court is not required to give any reason for granting the new trial." (quoting *Trivelas*, 357 S.C. at 553, 593 S.E.2d at 508)); *id.* ("Assuming evidence exists to support the circuit court's decision, a 'judge . . . [, sitting as] the thirteenth juror, possess[es] the veto power to the Nth degree. . . .'" (alterations in original) (quoting *Trivelas*, 357 S.C. at 553, 593 S.E.2d at 508)); *id.* at 453, 778 S.E.2d at 502 ("[A] circuit court's order granting or denying a new trial upon the facts will not be disturbed unless its decision is 'wholly unsupported by the evidence or the conclusions reached are controlled by [an] error of law.'" (second alteration in original) (quoting *Cody P. v. Bank of Am., N.A.,* 395 S.C. 611, 623, 720 S.E.2d 473, 479–80 (Ct. App. 2011))); *id.* at 453, 778 S.E.2d at 502–03 ("Our review is limited to consideration of

---

[3] Appellants' argument that no evidence supports the jury's verdict against the corporate defendants is not preserved for our review. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("If the losing party has raised an issue in the lower court, but the court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review.").

whether evidence exists to support the circuit court's order." (quoting *Lane v. Gilbert Constr. Co., Ltd.*, 383 S.C. 590, 597, 681 S.E.2d 879, 883 (2009))).

3.      Evidence supports the circuit court's denial of Appellants' motion for JNOV on the counterclaim alleging Johnson intentionally interfered with Brock's effort to sell the Firm to Stokes.  *See First S. Bank*, 414 S.C. at 445, 778 S.E.2d at 499 ("To establish a cause of action for intentional interference with prospective contractual relations, a plaintiff must show: 1) intentional interference with prospective contractual relations; 2) for an improper purpose or by improper methods; and 3) resulting in injury.  Generally, there can be no finding of intentional interference with prospective contractual relations if there is no evidence to suggest any purpose or motive by the defendant other than the proper pursuit of its own contractual rights with a third party.").

4.      Due to the circuit court's finding as to the existence of a good faith dispute, we vacate the attorney's fee award.  *See* § 41–10–80(C) ("In case of any failure to pay wages due to an employee as required by Section 41–10–40 or 41–10–50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."); *Futch v. McAllister Towing of Georgetown*, 335 S.C. 598, 612, 518 S.E.2d 591, 598 (1999) ("However, we decline to reinstate the award of treble damages and attorney's fees because there was a bona fide dispute about whether Employer owed Futch any wages."); *O'Neal v. Intermedical Hosp. of S.C.*, 355 S.C. 499, 507–11, 585 S.E.2d 526, 531–32 (Ct. App. 2003) (reversing an award of treble damages and attorney's fees because, based on the court's review of the record, "a bona fide dispute existed as to whether and to what extent [the employee] was entitled to payment").

**AFFIRMED IN PART, VACATED IN PART.**

**LOCKEMY, C.J., and KONDUROS and MCDONALD, JJ., concur.**